IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA
For the Use and Benefit of
ALAMO IRON WORKS, INC.,

          Plaintiff,

  vs.                                           No. CIV 05-177 LFG/WDS

HENSEL PHELPS CONSTRUCTION CO.
and TRAVELERS CASUALTY AND
SURETY COMPANY,

          Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

THIS MATTER comes before the Court on the Motion to Dismiss [Doc. 5] filed by Defendants Hensel Phelps Construction Company ("Hensel Phelps") and Travelers Casualty and Surety Company ("Travelers") under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party. For the reasons given below, the motion is denied.

**Factual and Procedural Background**

Plaintiff Alamo Iron Works ("AIW") brings this action under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, to recover on a payment bond provided by Defendants Hensel Phelps and Travelers. AIW alleges that Defendant Hensel Phelps, the prime contractor on a federal construction project at Sandia National Laboratories in New Mexico, entered into a subcontract with D'Ambra Steel Services, Inc. ("D'Ambra"), under which D'Ambra agreed to supply and place reinforcing steel for

the concrete portions of the project. [Complaint, ¶ 7].

AIW further states that it supplied materials consisting of reinforcing steel, rebar and related materials to D'Ambra for use in the Sandia project, that it furnished all materials as requested and fulfilled all obligations under its agreement with D'Ambra, but that D'Ambra failed to pay AIW for the materials thus furnished. [Complaint, ¶¶ 1, 8-9]. AIW further alleges that Defendant Travelers is the surety of a payment bond provided by Hensel Phelps for the Sandia project pursuant to the terms of the Miller Act [Complaint, ¶4] and AIW, not having been paid for the materials furnished, now brings this action to recover on the bond. The Miller Act provides for venue in the district where the contract was to be performed, and sets forth a one-year statute of limitations.

Defendants Hensel Phelps and Travelers seek dismissal of AIW's complaint, arguing that AIW has failed to join the subcontractor D'Ambra as a party defendant, and that D'Ambra is an indispensable party under the Federal Rules.

**Discussion**

Fed. R. Civ. P. 19 governs joinder of persons needed for just adjudication. Rule 19(a) defines "persons to be joined if feasible," and Rule 19(b) sets forth factors the Court must consider in deciding whether an action may proceed when joinder of such a person is not feasible.

The decision whether a party is "indispensable" under Rule 19 is a matter left to the sound discretion of the trial court. Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1410-11 (10th Cir. 1996); Lenon v. St. Paul Mercury Ins. Co., 136 F.3d 1365, 1369 (10th Cir. 1998). The moving party bears the burden of persuading the Court that dismissal is necessary, Rishell, *supra*, at 1411; and this burden is a strict one, as dismissal under Rule 19 is disfavored. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) ("Courts are loath to dismiss cases based on nonjoinder

2

of a party").

Determining whether an absent party is indispensable requires a two-part analysis. The Court must first determine under Rule 19(a) whether the absent party is necessary to the suit and therefore must be joined if it is feasible to do so. If the Court finds that the party is necessary but cannot be joined, then it turns to part (b) of Rule 19 to determine whether the action may proceed in the party's absence; if the action cannot proceed in the party's absence, the suit must be dismissed. Lenon, *supra*, at 1411. If its part (a) analysis convinces the Court that the party sought to be joined is not a necessary party, that ends the inquiry. Salt Lake Tribune Pub. Co. v. AT & T Corp., 320 F.3d 1081, 1098 (10th Cir. 2003) ("Because we conclude that Deseret News is not a necessary party, it cannot be an indispensable one and we therefore need not consider Rule 19(b)").

Rule 19(a) provides as follows:

> Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Defendants assert, and AIW does not dispute, that D'Ambra is subject to service of process and that joinder of D'Ambra will not deprive the Court of jurisdiction. However, it is clear that D'Ambra does not fall within the two other categories noted in Rule 19(a) and thus is not a "necessary party." Defendants' motion must therefore be denied.

3

Rule 19(a)(1) provides that a person must be "joined if feasible" if, in the person's absence, complete relief cannot be accorded to those already parties in the action. It is apparent in this case that "complete relief," as contemplated in the federal statute governing this action, can be accorded as between AIW and the two named defendants, even without the presence of the subcontractor D'Ambra.

AIW brings the present action under the Miller Act, which provides:

> (b) Right to bring a civil action.--
>
> (1) In general.--Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133.

The purpose of the Miller Act is to protect persons supplying labor and materials for construction of public buildings. The Act is to be liberally construed to carry out this Congressional intent. United States ex rel. Way Panama, S.A. v. Uhlhorn Int'l, 238 F. Supp. 887, 891 (D.C.Z. 1965), *aff'd*, 378 F.2d 294 (5th Cir. 1967). The Miller Act:

> governs the payment rights of persons who supply labor and material for the construction of most federal construction projects. Because a lien cannot attach to Government property, persons supplying labor or materials on a federal construction project are protected by a payment bond . . . . The Miller Act was "designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction projects" . . . . The Miller Act is to be liberally construed to effectuate its protective purposes.

United States ex rel. Polied Envtl. Servs., Inc. v. Incor Group, Inc., 238 F. Supp. 2d 456, 459, 460 (D. Conn. 2002), *quoting from* J.W. Bateson Co. v. United States ex rel. Board of Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund, 434 U.S. 586, 589, 98 S. Ct. 873 (1978).

As alleged in the Complaint, AIW provided materials to D'Ambra, the subcontractor on the Sandia Laboratories project, a project covered by a payment bond under the Miller Act. AIW therefore has the right to bring an action under the Act for recovery on the bond based on its allegation that D'Ambra failed to pay for the supplied materials. Although there is nothing which would prevent AIW from naming D'Ambra in the action (*see*, United States ex rel. Polied, *supra*, at 461: "While the Miller Act gives plaintiff a cause of action against the surety, . . . nothing in [the Act] prevents a sub-subcontractor from also suing the prime contractor or the subcontractor"), the Court has searched without success for any case which supports the notion that AIW is *required* to do so. And Defendants, who have the burden of persuasion in this matter, have not pointed to any such authority.

The cases are clear that a Miller Act plaintiff bringing action on the payment bond may name the surety alone without also bringing in any contractor or subcontractor, as the statutory right to sue on the bond is "independent of any right to sue the contractor." United States ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967). Indeed, in United States ex rel. Henderson v. Nucon Constr. Corp., 49 F.3d 1421, 1423 (9th Cir. 1995), the court noted that "all courts to consider the question have concluded that a surety alone may be sued by a subcontractor under the Miller Act."

*See also*, United States ex rel. Way Panama, S.A., *supra* (the fact that a contractor is not made a party to the action does not preclude plaintiff from proceeding against the surety); United

5

States ex rel. GE Supply v. Scale Constr., Inc., 1997 WL 222869 (N.D. Ill. Apr. 24, 1997) ("the claimant need not join the general contractor (or the subcontractor) to whom the labor and/or material actually was furnished. Thus, Electricon [the subcontractor] was neither a necessary nor an indispensable party to GE Supply's Miller Act claim against the payment bond"); United States ex rel. Special-Lite, Inc. v. Republic Western Sur. Co., 1998 WL 299674 (E.D. Pa. May 20, 1998) (in action against the surety on a payment bond under the Miller Act, subcontractor with whom the plaintiff-supplier contracted *held* to be a non-necessary party); United States ex rel. CBC of Charleston, Inc. v. RCS Corp., 366 F. Supp. 2d 332, 335 n.1 (D.S.C. 2005) ("a contractor is not a necessary and indispensable party in a claim under the Miller Act against the surety").

Based on these authorities, the Court concludes that Defendants failed to meet their burden under Rule 19(a)(1) of showing that in D'Ambra's absence, complete relief cannot be accorded among those already parties.

Defendants could still prevail, however, if they could establish under Rule 19(a)(2) that D'Ambra "claims an interest relating to the subject of the action" and is so situated that disposition of the action in D'Ambra's absence would either harm D'Ambra's ability to protect its interest, or else would subject Defendants to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

In their Motion to Dismiss, Defendants make broad, generalized allegations in the language of Rule 19(a)(2) that D'Ambra claims an interest related to the subject of this action; that D'Ambra's ability to protect its interest would be impaired or impeded if not made a party herein; and that Defendants themselves will be exposed to multiple or inconsistent obligations by reasons of D'Ambra's claimed interest. They give no specifics regarding these allegations, however, other than

6

to point to a lawsuit which they assert is now pending in Texas state court, between AIW as plaintiff and D'Ambra as defendant. They also provide the Court with a copy of D'Ambra's counterclaim against AIW in the Texas case.

The D'Ambra counterclaim, filed in the Texas state court action on April 11, 2004, alleges that AIW and D'Ambra have worked together in the past on a multitude of construction projects throughout the Southwest; that in negotiating contracts on several projects including the New Mexico Sandia Laboratories project which is the subject of the present suit, AIW represented to D'Ambra that it had a reliable source of supply for the steel and other materials it agreed to furnish to D'Ambra in spite of volatility and shortages in the steel market; and that these representations proved to be untrue and AIW failed to deliver scheduled steel for the Sandia project. D'Ambra alleges further that it was required to obtain replacement steel at a much higher price to keep the projects moving, that AIW thereafter demanded that D'Ambra pay a higher price for its steel than was previously agreed upon, and that D'Ambra refused to pay the higher price. D'Ambra's counterclaim against AIW in the state court case sets forth causes of action based on alleged breach of contract, violation of the UCC, and fraud or negligent misrepresentation. D'Ambra seeks declaratory relief and damages.

It is apparent that D'Ambra claims an interest in obtaining legal relief from AIW for certain actions taken by AIW in connection with the contract which gave rise to the payment bond. However, the fact that D'Ambra has made a claim against AIW in Texas state court proceedings does not compel the conclusion that it also claims an interest in the current proceedings on the Miller Act bond. *See*, United States ex rel. Special-Lite, Inc., *supra*, at *3, in which the court noted that a subcontractor, while it may perhaps have "had" an interest in the Miller Act proceedings had nevertheless not "claimed" any such interest but had instead pursued its claims in separate prior

lawsuit.  *See also*, Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) (holding Rule 19(a)(2) not satisfied when the absent party had not claimed an interest relating the subject of the Miller Act suit).

D'Ambra's claims against AIW are apparently being litigated in Texas state court, which is an appropriate forum for a breach of contract action between two Texas corporations.  There is no indication that the present federal action on a bond under the Miller Act will in any way impair or impede D'Ambra's ability to protect its interests in the Texas state forum.  *See*, United States ex rel. Gigliello v. Sovereign Constr. Co, 311 F. Supp. 371 (D. Mass. 1970) (court refuses to stay action under Miller Act pending litigation of plaintiff subcontractor's state law claims); General Heater Div. Corp., 455 N.Y.S. 2d 466, 115 Misc. 2d 36 (N.Y. App. Term 1982).  Defendants, in any event, have not met their burden of demonstrating any such impairment.

Nor have Defendants shown that, unless D'Ambra is brought in as a party to this action,  they will be subject to double, multiple or inconsistent obligations by reason of D'Ambra's interest.  And if they believe this to be the case, or if they believe that bringing D'Ambra in as a party "might interpose a defense that would be helpful, established rules of procedure are available for making him a defendant." United States v. Way Panama, *supra*, at 891.  It is entirely unnecessary for this Court to dismiss the action, or order that Plaintiff join D'Ambra, in order to effectuate joinder policy under the federal rules.

In holding that Defendants have not met their substantial burden of showing that dismissal is necessary, the Court cites not only their failure to present argument or analysis in support of their generalized assertions of harm, but notes also their failure to file a reply brief after Plaintiff responded to the Motion to Dismiss.

8

## **Order**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or in the alternative to order Plaintiff to join D'Ambra Steel Services, Inc. as a defendant in this case [Doc. 5] is DENIED.

     *[signature]*
Lorenzo F. Garcia
Chief United States Magistrate Judge